JOHNSON, Judge.
This is an appeal from a final judgment in favor of the plaintiffs, appellees.
Briefly stated, the facts are: J. L. Bell and Annabelle Graves Bell are the brother-in-law and sister, respectively, of appellees, J. R. Graves and Kathryn G. Murphree. Originally the J. L. Bell Company was a Florida corporation formed primarily by J. L. Bell and his wife, Annabelle G. Bell, with its primary purpose being the manufacture and sale of furniture. Its plant was located at Quincy, Florida. Over a period of years, the Bell Company did business with the defendants-appellants Brady Belcher, W. E. Belcher and some of the Belcher corporations, such as Belcher Lumber Co. and Belcher Sales Co. The J. L. Bell Company purchased materials from the Belcher companies and gradually' got pretty deeply in debt to the Belcher companies. Somewhere along the line the Belchers became the principal stockholders of J. L. Bell Company and its officers and directors. Mr. J. L. Bell was eventually eased out of the corporation as an officer, by his resignation as president.
During the course of its business, Mr. J. L. Bell borrowed from his mother-in-law, brother-in-law and sister-in-law, certain moneys, as well as from a friend and former salesman for the Company, and promissory notes executed by J. L. Bell Company, signed by J. L. Bell, were issued as evidence of said loans. These notes constitute the basis for the first seven counts of the appellees’ complaint in the lower court.
The eighth count of the complaint pertained to a second mortgage given by J. L. Bell Company to Brady Belcher and W. E. Belcher, Jr. dated July 3, 1962, in the amount of $230,000, which the plaintiffs below contend to be invalid because it constituted a preferential transfer of assets within the meaning of Section 608.55, Florida Statutes, F.S.A. In this count of the complaint, Norris Furniture Co. is made a defendant and alleged to be in possession of the property of J. L. Bell Company described in the complaint. It is alleged that Norris Furniture Company was created by the Belchers in July 1962.
In March of 1963 or shortly thereafter, or shortly before then, J. L. Bell contacted the plaintiffs below with a letter recom *742 mending the signing of certain stand-by agreements, which agreements have been interposed by the defendants as defenses to the first seven counts of the complaint.
The letter states that “ * * * Annabelle and I deem it to the eventual benefit of everyone if the Corporation continues to operate. I have also consulted with such creditors as I knew had a genuine interest and they are even more of this opinion, than are we. Consequently we deem it advisable that the standbys are signed * * * ”
The stand-by agreements in question are as follows:
“March 14, 1963
“J. L. Bell Co., Inc.
P. O. Box 428
Quincy, Florida
“Gentlemen:
“After discussions with J. L. & Annabelle G. Bell, I concur with their recommendation that the best interest of all will be served if the corporation continues operation, and does not go into bankruptcy.
“Consequently, I agree to stand by, without interest, subject to the following terms and conditions:
“1. That the purpose of this stand-by is to enable the corporation to operate, and if for any reason the corporation fails to do so, or does not continue now, this stand-by is not effective.
“2. That such has been granted entirely and because of J. L. Bell and Annabelle G. Bell, at their request, and shall remain in effect for a period of ten years, in which time I will not enter suit, unless prior to the ten years the buy-sell agreement between J. L. Bell and Annabelle G. Bell and Brady Belcher, W. E. Belcher, Jr. and/or Belcher Lumber Sales Co., Ltd. dated February 27, 1963, is consummated.
“3. That should the corporation liquidate voluntarily or involuntarily, this agreement is no longer in effect, and I authorize J. L. & Annabelle G. Bell as agents in my behalf, to take such measures as they see fit to act in my best interest. The only exception to the above is that should you be adjudicated a bankrupt, that you have thirty days in which to remove or discharge.
“4. That I will not assign nor negotiate any note or notes in my possession except subject to the provisions hereof.
“5. That this debt is not subject to any statute of limitations and. that it is the moral obligation of the corporation to begin to resolve its just debts as rapidly as possible, and in such percentage as is fair to one and all.
“6. That the present balance of this debt is $10,000.

Witnesses
It appears that not all of the creditors of J. L. Bell Company signed these agreements, only the plaintiffs. It is to be noted also from a reading of the agreement that the same were “granted entirely and because of J. L. Bell and Annabelle G. Bell, at their request.” There is no indication of an agreement for anything to be done by J. L. Bell, Annabelle G. Bell nor J. L. Bell Company nor of either the Belchers or their companies, nor any form of consideration nor mutuality between the parties that could or did constitute a valid consideration for these agreements. None of the recipients of benefit from these agreements were bound to do anything. It is apparent from the record and affidavits and depositions that the stand-by agreements were primarily given because of the family relationship between the Graves *743 and the Bells. It is also apparent from depositions and affidavits that the Belchers now dominate, operate and so manage and control J. L. Bell Company and Norris Furniture Co. to the end that J. L. Bell Company does not now nor will it ever accumulate any assets from which the plaintiffs could reasonably be expected to be paid by J. L. Bell • Company[1] and in fact with J. L. Bell and Annabelle G. Bell out of the picture, the apparent intent and the true tenor of the stand-by agreements has been so violated as to render the same void, even if such agreements ever had any validity, and we agree with the trial court no validity did ever exist.
Therefore, it is our opinion that the defendants failed to so controvert the affidavits and depositions in said cause as to defeat the plaintiffs’ motion for summary judgment on counts one through seven of the complaint and the final judgment entered therein. The trial court did not err in refusing to permit the filing of the amended defense, nor in denying motion for rehearing.
As to count eight of the complaint there is ample uncontradicted evidence to show that at the time the Belchers obtained their mortgage, that the J. L. Bell Company was insolvent and that although as pointed out in the depositions, the mortgage purports to be for new money advanced by one of the Belchers, the deposition shows that this was done only for the purpose of circumventing the statute and that it was in reality for the purpose of satisfying the claims of existing creditors, Belcher Lumber Co. and Belcher Sales Company, or notes on which one or both of the Belchers were primary endorsers and therefore liable. This being in violation of Section 608.55, Florida Statutes, F. S.A., the trial court was correct in holding said mortgage null and void.
Therefore, we affirm the final judgment appealed from.
WIGGINTON, Chief Judge, and SPEC-TOR, J., concur.

. 7 Fla. Jurisprudence, Corporations § 302: “Although there is generally deemed to be no privity or contractual relationship between a creditor and the directors or officers of a corporation, it is said that the directors of a corporation are bound to exercise diligence and good faith in dealing with the properties of the corporation to the end that the creditor’s interests may be protected.”